## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 04 2016, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle Laux
St. Joseph County
Public Defender's Office
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:
N.S. (Minor Child), Child in Need of Services,

and

C.S. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

November 4, 2016

Court of Appeals Case No.
71A03-1603-JC-606

Appeal from the St. Joseph Probate Court

The Honorable James N. Fox, Judge

Trial Court Cause No.
71J01-1506-JC-339

**Baker, Judge.**

[1] C.S. (Father) appeals the trial court's order adjudicating Father's child, N.S. (Child), to be a Child in Need of Services (CHINS). Father argues that there is insufficient evidence supporting the CHINS adjudication. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born to Father and J.B. (Mother) on November 20, 2012. On May 19, 2015, the Department of Child Services (DCS) received a report regarding domestic violence between Father and Mother. On June 2, 2015, Mother met with a DCS family case manager (FCM) and made the following statements to the FCM: (1) Father has been diagnosed with schizophrenia and bipolar disorder and was not taking his medication; (2) during the altercation in question, her brother and Father got into a fight and Father tried to push Mother and her brother out of the home; (3) Child was present during that altercation; and (4) the previous Friday, she and Father had been in an altercation.

[3] On June 12, 2015, the FCM met with Mother and Father. Father admitted that he was having problems with his medication, did not get along with his therapist, and was suffering from mental health issues as a result. The parents agreed to participate in a program of Informal Adjustment (IA). But when the parents returned to DCS on a later date to sign the IA, they refused to sign or participate in services.

[4] On July 8, 2015, DCS filed a petition alleging Child to be a CHINS, based on multiple reports of domestic violence between Mother and Father while Child was present as well as Father's ongoing mental health issues. On July 9, 2015, Child was removed from her parents' care and custody and placed in relative care with her maternal grandmother. The parents denied the allegations in the CHINS petition and the trial court set a CHINS factfinding hearing for January 22, 2016.[1]

[5] At the factfinding hearing, the following evidence was introduced:

- The South Bend Police Department has been called to the parents' home "multiple times" for incidents of domestic violence. Tr. p. 18. Child was present for all of these incidents. *Id.* at 24.
- On April 9, 2014, police were called to the home. Mother told the responding officer that when she tried to leave the house, Father blocked the door. He then "threw her to the ground," held a lamp above her head and threatened to beat her with it, attempted to hit her with a broom and threw her to the ground again, put his arms around her neck and held her down, and Child was "in the middle of the living[]room screaming and crying." *Id.* at 40. Father was arrested as a result of the incident.
- On May 17, 2015, police were again called to the home. Responding officers witnessed Father punching Mother's brother in the face. Mother told an officer that Father had threatened to snap her neck and to kill her, that he had thrown a plate of food and the dish at her, and that the previous Friday, another physical altercation resulted in bruising to

---

[1] Father points out that the CHINS hearing was set significantly past the sixty-day deadline set forth in Indiana Code section 31-34-11-1(a), but stops short of arguing that the CHINS finding should be reversed because of this failure to meet the statutory deadline. Father has not provided us with the transcript of the July 9, 2015, hearing, so we have no way of knowing whether he consented or objected to this hearing date. Additionally, there is no evidence that he filed a motion to dismiss the case pursuant to Indiana Code section 31-34-11-1(d). Consequently, we decline to address this issue.

Mother. Mother was afraid she would not be able to leave the home safely, which is why she asked her brother to come over. Two officers observed bruising on Mother's wrists.

- Maternal grandmother testified that during the spring of 2015, Mother called maternal grandmother, saying that Father "had a gun on her" and was holding Child in his arms. *Id.* at 78-79. Maternal grandmother has concerns about Mother and Child's safety.

- On April 22, 2014, Father pleaded guilty to class A misdemeanor intimidation.

- DCS employees testified that they were concerned for Child's safety with the ongoing domestic violence in the home. Because the parents refused to engage in the IA, the FCM did not believe they would participate in services without the coercive intervention of the court.

- Although the parents had been involved with DCS for over six months, they had yet to participate in the services DCS had referred on their behalf. Father was unsuccessfully discharged from services at the YWCA because of his behavior and failed to participate in a batterer's intervention program.

On February 2, 2016, the trial court found Child to be a CHINS. On March 2, 2016, a dispositional hearing took place, and on March 3, 2016, the trial court entered a dispositional decree. Among other things, Father is ordered to complete a psychological evaluation and comply with all recommendations and complete a batterer's intervention program. Father now appeals.[2]

---

[2] Mother is not participating in this appeal.

# Discussion and Decision

## I. Standard of Review

Father argues that there is insufficient evidence supporting the CHINS adjudication. Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.R.,* 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*
>
> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.,* 919 N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253–54 (Ind. 2012) (footnote omitted).

Here, DCS alleged that the child was CHINS pursuant to Indiana Code section 31-34-1-1, which provides as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1)　　the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2)　　the child needs care, treatment, or rehabilitation that:

(A)　　the child is not receiving; and

(B)　　is unlikely to be provided or accepted without the coercive intervention of the court.

Our Supreme Court has interpreted this provision to require "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.,* 2 N.E.3d 1283, 1287 (Ind. 2014).

# II. Sufficiency

## A. Findings

In attacking the evidence supporting the CHINS finding, Father first focuses on some of the findings made by the trial court in the CHINS order. He contends that these specific findings are not supported by the evidence.

First, he directs our attention to the finding "[t]hat on multiple occasions between June of 2014 and May of 2015 parents became involved in disputes

that required intervention of law enforcement[.]" Appellant's App. p. 12. Father insists that there was evidence of only two altercations, not "multiple" altercations. Initially, we note that "multiple" means "more than one," meaning that two incidents would qualify as multiple incidents. *Merriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/multiple. And in any event, there *was* evidence presented of more than two altercations:

- Mother testified that police have been called to their home on "several" occasions. Tr. p. 62.
- Law enforcement has been called to parents' home "multiple times" for domestic violence incidents. *Id.* at 18.
- Physical altercations occurred on April 9, 2014, and May 17, 2015, that required intervention of law enforcement.

This evidence readily supports the trial court's finding.

[10] Second, Father directs our attention to the finding "[t]hat on one occasion the parents became engaged in an argument that became a physical altercation where father knocked plates and food out of mother's hands[.]" Appellant's App. p. 12. A police officer testified that Mother reported that Father had thrown a plate of food and the dish at Mother. Tr. p. 45. When asked whether Father had "knock[ed] a plate of food out of [her] hand in the hallway," Mother responded "[y]eah, he flipped a plate" and the "plate of food went flying[.]" *Id.* at 65. This evidence supports the trial court's finding.

[11] Third, Father challenges the trial court's finding "[t]hat on another occasion the parents again became engaged in an argument that became a physical altercation[.]" Appellant's App. p. 12. The evidence in the record reveals that

on April 9, 2014, Father threw Mother to the ground, held a lamp above her head and threatened to beat her with it, attempted to hit her with a broom and threw her to the ground again, put his arms around her neck and held her down, and tried to stop Mother when she tried to get away. Tr. p. 39-40. Mother testified that this incident did, in fact, happen. *Id.* at 56. This evidence readily supports the trial court's finding.

[12] Fourth, Father highlights the finding that "Mother claimed that father threatened her and that a gun was present[.]" Appellant's App. p. 12. Maternal grandmother testified that sometime during the spring of 2015, Mother called her and said that Father "had a gun on her" and that Child was in Father's arms. Tr. p. 78. That Mother, herself, did not testify regarding this altercation does not undercut this finding. We find that the evidence supports the finding.

[13] Finally, Father challenges the trial court's finding that "[c]onfrontations have occurred in the presence of the child[.]" Appellant's App. p. 12. We find ample evidence in the record supporting this finding:

- Mother told a police officer that Child was "in the middle of the living[]room screaming and crying" during the April 9, 2014, incident. Tr. p. 40-41. She testified at trial that the incident was "partial[ly]" observed by Child. *Id.* at 57.
- The same officer testified that Father walked out of the house with Child directly following the April 9, 2014, incident.
- Maternal Grandmother testified that during the incident in spring of 2015 when Father pointed a gun at Mother, Father was holding Child in his arms.
- Mother testified that during the May 17, 2015, incident when Father knocked the plate out of her hands, Child was present in the home.

In sum, we find that all of the complained-of findings were supported by the evidence in the record and decline to reverse on this basis.

# B. CHINS Finding

Father contends that the trial court's findings do not support its conclusion that Child is a CHINS. As noted above, our Supreme Court has summarized the statutory requirements for finding a child to be a CHINS, noting that these are the three basic elements that must be proved: "that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *S.D.,* 2 N.E.3d at 1287.

It is well established that a child's exposure to domestic violence can support a CHINS finding. *E.g.*, *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). DCS and the trial court need not wait until a child is physically or emotionally harmed to intervene; instead, a child may be found to be a CHINS if his or her physical or mental condition is endangered. *E.g.*, *In re R.P.*, 949 N.E.2d 395 (Ind. Ct. App. 2011); *see also In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (observing that exposure to violence during the first three years of life can cause detrimental effects to the brain's neural pathways and that "[i]nfants as young as fifteen months exhibit behavioral disturbances from spousal violence").

Father focuses primarily on his argument that there is no evidence indicating that Child actually witnessed the domestic violence. Initially, we note that there is not necessarily a requirement that a child be a witness to ongoing

domestic violence in the home to support a CHINS finding. And in any event, there is ample evidence in the record here establishing that Child did, indeed, witness domestic violence on more than one occasion. On April 9, 2014, when Father repeatedly threw Mother to the ground, threatened to beat her with a lamp and attempted to beat her with a broom, and put his arms around her neck, Child was in the middle of the room, "screaming and crying." Tr. p. 40. In the spring of 2015, Mother called her mother and said that Father was pointing a gun at her and had Child in his arms. In May 2015, Father threatened to snap Mother's neck and kill her and knocked a plate of food out of her hands. She did not feel she could safely leave the home and had to call her brother to come and help. Mother admitted that Child was present during this period of time. *Id.* at 65-66.

[16] In sum, the record reveals multiple instances of domestic violence with Child present. Additionally, Father had serious mental illnesses for which he was not receiving appropriate treatment, causing frequent agitation and unpredictability. The parents refused to participate in services with an IA.[3] Maternal Grandmother and DCS employees were concerned about Child's safety and well-being when in the care and custody of her parents. We find that this evidence supports the trial court's conclusion that Child is a CHINS. Father's

---

[3] Father does not challenge the trial court's conclusion that the coercive intervention of the court was necessary, but we note that the parents' refusal to participate with services through an IA readily supports that conclusion.

arguments to the contrary amount to a request that we reweigh the evidence and assess witness credibility, and we decline to do so.

[17] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.